[No. B143499. Second Dist., Div. Three. Sept. 20, 2000.]

MICHAEL WOO et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
J. MICHAEL CAREY, as City Clerk, etc., et al., Real Parties in Interest.

**COUNSEL**

Strumwasser & Woocher, Fredric D. Woocher and Michael J. Strumwasser for Petitioners.

Chinese American Citizens Alliance, San Francisco Chapter; Asian Pacific American Legal Center of Southern California; Organization of Chinese Americans, Inc.; National Asian Pacific American Legal Consortium; Black American Political Association of California; Chinese American Citizens Alliance, Los Angeles Chapter; Chinese Americans United for Self Empowerment; Los Angeles Sentinel; and Law Office of Pierpont M. Laidley as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

James K. Hahn, City Attorney, Pedro B. Echeverria, Mark L. Brown and Anthony Saul Alperin, Assistant City Attorneys, for Real Parties in Interest.

**OPINION**

**CROSKEY, J.**—Petitioner Michael Woo served two full terms as an elected member of the Los Angeles City Council, from July 1985 to June 1993. He seeks reelection for a third term to commence in July 2001. The city clerk advised him that he was ineligible to seek reelection based on a provision of the new city charter limiting elected city officials to only two terms in office. The provision is identical to a provision of the former charter, except that it omits language expressly stating that only terms commenced on or after July 1, 1993, count toward the two-term limit.

Woo contends the new charter provision should be construed the same as the former charter provision despite the omitted language, which would make him eligible for reelection. He and a registered voter together challenged the city's rejection of his candidacy by way of petition for writ of

mandate in the superior court.[1] The superior court denied the petition, stating that the charter provision is clear on its face and prevents Woo from seeking or serving a third term. Woo then petitioned this court for a writ of mandate.

We conclude that the voters intended to retain the former term limits law without change and did not intend to make persons who had served two terms of office before July 1993 ineligible to hold office. We therefore construe the new charter provision to except terms of office served before July 1993 from counting toward the two-term limit, as under the former charter.

## Factual and Procedural Background

### 1. Former City Charter Section 7.5

Los Angeles voters first approved a charter provision imposing term limits on elected city officials in 1993. (Subsequent Charter references are to the Los Angeles City Charter.) Two competing measures appeared on the ballot. Proposed Charter Amendment 2 would have limited elected city officials to only two terms in office, counting only terms commenced on or after July 1, 1993. The official voter information pamphlet provided to registered voters included a description of the measure stating, "Beginning July 1, 1993, no one would be allowed to hold the same office for more than two 4-year terms. Those currently holding office would be eligible for re-election for two additional terms." The pamphlet also included an impartial summary stating, "This measure would apply to all terms in office which begin on or after July 1, 1993. All current office holders would be eligible for re-election for up to two more terms." The pamphlet included the text of the proposed amendment: "No person may serve more than two terms of office as Mayor. No person may serve more than two terms of office as City Attorney. No person may serve more than two terms of office as Controller. No person may serve more than two terms of office as member of City Council. *These limitations on the number of terms of office shall apply only to terms of office which begin on or after July 1, 1993.* These limitations on the number of terms of office shall not apply to any unexpired term to which a person is elected or appointed if the remainder of the term is less than one-half of the full term of office." (Italics added.)

Proposed Charter Amendment 4 also would have limited elected city officials to only two terms in office, counting only terms commenced on or

---

[1]Patrick Hancock, a Los Angeles resident and registered voter in the district for which Woo seeks reelection, petitioned the superior court and this court together with Woo in this action. For convenience, however, we shall hereafter refer to petitioner in the singular or simply as "Woo."

after July 1, 1993, but it would have limited incumbent city council members whose terms expired in 1995 to only one additional term.[2] The impartial summary in the official voter information pamphlet stated, "This measure would apply to all terms in office which begin on or after July 1, 1993. Those currently holding a Council office which will be up for re-election in two years would only be eligible to serve one more term. All other current office holders would be eligible for re-election for up to two more terms." The pamphlet also included the text of the proposed amendment. Thus, the voter information pamphlet made it clear that both proposed charter amendments would exclude from the new two-term limit any terms commenced before July 1993, except that Proposed Charter Amendment 4 would limit those incumbents whose terms had commenced in 1991 to only one additional term.

The voters rejected Proposed Charter Amendment 4 and approved Proposed Charter Amendment 2. It was enacted as section 7.5 of the Los Angeles City Charter in 1993.

### 2. Current City Charter Section 206

The city council appointed a charter reform commission in 1996 to draft and propose a new city charter. Los Angeles voters elected a second charter reform commission in 1997 to perform the same task. The two commissions coordinated their efforts and jointly proposed a new city charter, which was submitted to the voters as Charter Measure 1 in June 1999. The voters approved the measure, and the new city charter became effective on July 1, 2000, repealing the former city charter.

Section 206 of the new city charter is identical to former section 7.5, quoted *ante*, except that the italicized language is omitted.

The official voter information pamphlet for Charter Measure 1 included a description of the measure that briefly identified the effects of many provisions of the proposed city charter.[3] It characterized those effects using italicized terms, such as *"retains," "changes," "adds," "removes,"* and *"replaces."* Under the subheading "Term Limits," it stated only: *"Retains* current term limits for elected City officials." The pamphlet also included an impartial summary describing significant changes in the proposed charter and comparing the proposed new charter provisions with those of the

---

[2]City council members are elected to four-year terms. The terms are staggered, so that members representing odd-numbered districts were elected in 1993 and members representing even-numbered districts were elected in 1995.

[3]The pamphlet stated that the descriptions provided were "simplified versions" of the actual measures.

existing charter. The impartial summary did not mention term limits for city council members or indicate any change in the existing term limits. The pamphlet did not include the text of the proposed city charter, but the full text was included in a separate booklet of approximately 150 pages provided to registered voters.

### 3. *The City's Rejection of Woo's Candidacy*

Woo inquired in May 2000 whether the city would accept his candidacy for city council in the April 2001 election and whether the city would allow him to serve if elected. The city clerk responded in June 2000, on advice of the city attorney, that Woo's prior service of two full terms as a member of city council made him ineligible to serve a third term under Charter section 206, and that the city therefore would not accept his candidacy.

### 4. *Trial Court Proceedings*

Woo petitioned the superior court in June 2000 for a writ of mandate directing the city clerk and city to accept his candidacy and allow him to serve as a member of city council if elected. He argued that despite the omission of the pertinent language from Charter section 206, the drafters of the revised city charter and voters who approved it intended to preserve the prior term limits law without change and never intended to revoke the rule that only terms commenced on or after July 1, 1993, counted toward the two-term limit. He also argued that to consider terms commenced before July 1993 in applying the new provision would make it retroactive in violation of both Government Code section 36502, subdivision (b),[4] and the federal Constitution.[5]

---

[4]Woo argued that Government Code section 36502, subdivision (b), preempted any retroactive application of Charter section 206. That section provides: "(b) Notwithstanding any other provision of law, the city council of a general law or charter city may adopt or the residents of the city may propose, by initiative, a proposal to limit or repeal a limit on the number of terms a member of the city council may serve on the city council, or the number of terms an elected mayor may serve. *Any proposal to limit the number of terms a member of the city council may serve on the city council,* or the number of terms an elected mayor may serve, *shall apply prospectively only* and shall not become operative unless it is submitted to the electors of the city at a regularly scheduled election and a majority of the votes cast on the question favor the adoption of the proposal. Notwithstanding the provisions of this subdivision, the provisions of any city charter that, on January 1, 1996, impose limitations on the number of terms a member of the city council may serve on the city council, or the number of terms an elected mayor may serve, shall remain in effect. Unless otherwise prohibited by a city charter, any city charter may be amended pursuant to this section or pursuant to the procedure specified in the charter, to include the limitation authorized in this subdivision." (Italics added.)

[5]Woo also argued that the effect of the city's construction and application of Charter section 206 retroactively imposed a lifetime limit on office-holding eligibility against a

Woo submitted declarations by the chairpersons of the two charter reform commissions stating that they believed that the commissions had intended to retain the existing term limits without change, but acknowledging that neither commission had discussed the effect of omitting the pertinent language from the new city charter provision. The chairpersons expressed the view that the commission members had not considered the possibility that someone who had served a term before July 1993 but had not served two terms since that date would seek to serve another term after the new city charter became effective, and that the pertinent language therefore was considered surplusage.[6]

The city opposed the petition on the grounds that the two-term limit in Charter section 206 is unambiguous and makes no exception for terms commenced before July 1993; that the deletion of the pertinent language from former Charter section 7.5 indicates an intention to effect a substantive change; that Government Code section 36502, subdivision (b), cannot pre-empt a city charter provision governing local elections; and that the new provision is neither retroactive nor unconstitutional.

particular nonincumbent former officeholder based on terms he had completed long before the enactment of the new charter and without any notice having been given to either him or the voters that such a construction of section 206 would be adopted. He also emphasized that, in spite of such construction, other elected officials were and are permitted to continue to serve more than two terms in office. He argued that all of this constituted a violation of the First Amendment and the equal protection and due process clauses of the federal Constitution.

[6]George David Kieffer, the chair of the appointed charter reform commission, stated in his declaration, filed with the trial court, that the commission on which he served "determined that we did not want to make any changes to the term limitations contained in the existing City Charter. Accordingly, Section 206 was intended simply to maintain the existing term limits provision of the City Charter. To the best of my knowledge, the deletion of language from the existing City Charter section stating that its limitations apply only to terms of office which begin on or after July 1, 1993, was not intended by anyone on our Commission to bring about any substantive change in the operation of the term limits provision. There were several other places in the City Charter in which, in an effort to update and streamline its language, the Commission proposed removing references to specific dates that we believed no longer had any relevance."

The chair of the Elected Los Angeles Charter Reform Commission, Erwin Chemerinsky, stated in his declaration that the sentence which was present in the 1993 charter amendment establishing term limits for officeholders, but was omitted in the new charter ("These limitations on the number of terms of office shall apply only to terms of office which begin on or after July 1, 1993") had not been "deleted out of any intent to change the operation of the existing term limits provision, but simply because we viewed the sentence as no longer necessary and thus surplusage. One of the Charter Reform Commissions' objectives in drafting the new proposed City Charter was to streamline the charter by removing any provisions or language that were considered to be outdated or unnecessary. In reviewing the sentence quoted above, we thought it was no longer necessary or relevant to explicitly 'grandfather' these pre-1993 terms of office from the new term limits provision, because the current city officeholders were all by now serving their second post-1993 terms of office anyway."

The trial court determined that the language of Charter section 206 stating "No person may serve more than two terms of office as member of City Council" is clear on its face and makes no exception for terms served before July 1993. It concluded that regardless of what the commission members intended, the voters' intent governs and that intent is established by the clear language of the provision that they approved. It also concluded that Government Code section 36502, subdivision (b), does not preempt Charter section 206 because term limits for city officials is not a matter of statewide concern, and that the provision is neither retroactive nor unconstitutional. The court denied the petition for writ of mandate in August 2000.

## CONTENTIONS

Woo contends (1) the drafters of the revised city charter and voters who approved it intended to preserve the prior term limits law without change and, despite the omission of the pertinent language from Charter section 206, they did not intend to revoke the rule that only terms commenced on or after July 1, 1993, count toward the two-term limit; (2) to apply the two-term limit to his terms served before July 1993 would be a retroactive application in violation of Government Code section 36502, subdivision (b); and (3) the two-term limit cannot apply retroactively because it does not expressly state that it applies retroactively and because retroactive application would violate his due process, equal protection, and other constitutional rights.

## DISCUSSION

The principal issue presented is the proper construction to be given to Charter section 206. The construction of a written law is a legal issue that we review de novo. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672]; *United Assn. of Journeymen v. City and County of San Francisco* (1995) 32 Cal.App.4th 751, 759, fn. 6 [38 Cal.Rptr.2d 280] [construction of a city charter].)

■ A city charter is the city's constitution. (*City and County of San Francisco v. Patterson* (1988) 202 Cal.App.3d 95, 102 [248 Cal.Rptr. 290]; see *Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 170 [36 Cal.Rptr.2d 521, 885 P.2d 934] ["[T]he charter represents the supreme law of the City, subject only to conflicting provisions in the federal and state Constitutions and to preemptive state law. [Citations.]"].) Accordingly, we

construe a voter-approved amendment to the city charter as we would construe a voter-approved amendment to the state Constitution.[7]

The voters' intent in approving the measure is our paramount concern. (*People v. Jones* (1998) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163]; *Davis v. City of Berkeley* (1990) 51 Cal.3d 227, 234 [272 Cal.Rptr. 139, 794 P.2d 897].) To determine that intent, we first look to the words of the provision adopted. (*Jones*, at p. 1146; *Davis*, at p. 234.) If the language is clear and unambiguous, there ordinarily is no need for construction. (*Jones*, at p. 1146; *Davis*, at p. 234.) We presume that the voters intended the meaning apparent on the face of the measure, and our inquiry ends. (*Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 543 [277 Cal.Rptr. 1, 802 P.2d 317].)

However, we will not presume that the lawmakers (here, the voters) intended the literal construction of a law if that construction would result in absurd consequences. (*People v. Broussard* (1993) 5 Cal.4th 1067, 1071-1072 [22 Cal.Rptr.2d 278, 856 P.2d 1134]; see *People ex rel. Dept. of Transportation v. Southern Cal. Edison Co.* (2000) 22 Cal.4th 791, 798 [94 Cal.Rptr.2d 609, 996 P.2d 711].) In those circumstances, we must consider extrinsic evidence of the voters' intent despite the unambiguous language of the enactment. (See, e.g., *Dept. of Transportation*, at pp. 799-802; *Broussard*, at pp. 1072-1076.) " '[T]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' " (*Broussard*, at p. 1071, quoting *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

■ The literal meaning of Charter section 206 is that no person may serve more than two terms as a member of the city council, without exception. So construed, the provision would prevent seven incumbent council members who served two terms before July 1, 2000, from completing their current terms in office.[8] This is so because Charter section 206 makes no express exception for the current term served if the member has served two prior terms, and makes no express exception for terms served

---

[7]Los Angeles voters approved a revised city charter to replace the former city charter (Cal. Const., art. XI, § 3, subd. (a)). With respect to term limits, the only effect of the revision was to apparently amend the former provision by omitting the language that excluded from consideration terms served before July 1993.

[8]We construe "more than two terms" to encompass any time served in office after the completion of two prior terms, and we construe the final sentence of Charter section 206 to exclude from those prior terms any prior unexpired term to which the member was elected or appointed that had less than two years remaining at the time that the member began to serve. Accordingly, we take judicial notice of the fact that as of July 1, 2000, when the new charter became effective, seven of the 15 council members had served more than two terms in office. They included Joel Wachs (then serving his 8th term), John Ferraro (9th term), Ruth Galanter

before July 1993.[9] Thus, if the literal meaning were applied, seven of the 15 council districts immediately would become unrepresented, requiring a special election or appointment (Charter, § 409). Meanwhile, the city council would lack a quorum and would be completely disabled. The unseated incumbents very likely would challenge the constitutionality of the measure, leading to contentious and difficult litigation. Because we cannot presume that the voters intended such absurd and unreasonable consequences, we must consider extrinsic evidence to determine their true intent.

In its arguments to the trial court the city asserted that the plain meaning of Charter section 206 was clearly discernable from the words used and it should be enforced as written. When we pointed out at oral argument the absurd consequences which would flow from such a construction of the Charter language, the city changed course and argued that "other provisions" of the Charter implied an exception to the otherwise clear language of section 206, which would allow any sitting councilperson to finish his or her term thus preventing the result which we see as compelled by a literal construction of section 206.[10] However, we have examined such other provisions of the Charter and we do not find that they reasonably can be read to provide salvation from the consequences which necessarily would flow from the city's construction of section 206. At most, the city's argument provides support for the proposition that an ambiguity exists (in the words of petitioner) "on the critical question of which 'terms of office' are to be counted toward the Charter's two-term limit: Does the phrase mean *all* terms of office, as the city contends, including those served prior to 1993; . . . or . . . does the phrase refer only to those terms of office served after July 1, 1993, as the identical language in former Charter section [provided]?" Thus, even under the city's argument we are required to go beyond the literal language of section 206 and examine extrinsic evidence to determine the voters' intent. (See *Lungren v. Deukmejian, supra,* 45 Cal.3d at p. 735.)

The information and arguments contained in the official ballot pamphlet may indicate the voters' understanding of the measure and their intent in passing it. (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 349 [276 Cal.Rptr. 326, 801 P.2d 1077]; *Davis v. City of Berkeley, supra,* 51 Cal.3d at p. 237.) The historical context in which the provision was adopted also is

---

(4th term), Mark Ridley-Thomas (3d term), Rita Walters (3d term), Nate Holden (4th term), and Hal Bernson (6th term).

[9]To except terms served before July 1993 from counting toward the two-term limit would allow those current council members who served two terms before that date to complete their current terms in office.

[10]For *example*, we are cited to Charter section 205, which specifies that "members of the Council shall hold their offices for a term of four years" and that they "shall hold office until their successors have qualified."

relevant. (*Rossi v. Brown* (1995) 9 Cal.4th 688, 700, fn. 7 [38 Cal.Rptr.2d 363, 889 P.2d 557]; *Davis*, at p. 235.)

■ We also are guided by the principle that the right to hold public office is a fundamental right of citizenship (*Zeilenga v. Nelson* (1971) 4 Cal.3d 716, 720 [94 Cal.Rptr. 602, 484 P.2d 578]) that can be curtailed only if the law clearly so provides (*Carter v. Com. on Qualifications, etc.* (1939) 14 Cal.2d 179, 182 [93 P.2d 140]; *Helena Rubenstein Internat. v. Younger* (1977) 71 Cal.App.3d 406, 418 [139 Cal.Rptr. 473]). Any ambiguity in a law affecting that right must be resolved in favor of eligibility to hold office. (*Carter*, at p. 182; *Younger*, at p. 418.)

■ The description and summary of Charter Measure 1 provided in the official ballot pamphlet indicated no change in the existing term limits law or in the rule that terms served before July 1993 did not count toward the two-term limit.[11] The pamphlet did not state that the law would be changed substantially so as to count those terms served before July 1993 that were excluded under the existing provision, but stated that the existing term limits would be "*retain*[ed]" and thus expressly represented that there was no change. Although the pamphlet described numerous changes in the new charter, using italicized terms such as "*changes*," "*adds*," "*removes*," and "*replaces*," it did not employ any of those terms with respect to term limits, further indicating to the voters that there was no material change. This is true particularly in light of the prominence of a similar issue in the 1993 election, in which the voters had approved a measure whose only significant difference from a competing measure was the manner in which it excluded from consideration prior terms served. Again, the statement that the existing term limits were "*retain*[ed]" and the failure to mention any change in the law reasonably led the voters to believe that there was no change.

The ballot pamphlet did not inform the voters that the measure would make seven council members ineligible to serve the remainder of their current terms or indicate any of the potential adverse consequences of such an extreme result. Absent some indication that the voters were aware of and intended that result, we cannot adopt a construction that would require that result.

Moreover, the ballot pamphlet did not set forth the text of the proposed provision or facilitate a comparison with the existing provision through

---

[11]Both parties construe the language "These limitations on the number of terms of office shall *apply* only to terms of office which *begin* on or after July 1, 1993" of former Charter section 7.5 (italics added) to mean that terms *commenced* before that date did not count toward the two-term limit under the former charter. Although the language might be susceptible to more than one reasonable construction, the parties do not dispute its meaning.

which a voter could discover the purported change that the description and summary failed to disclose. A voter would have had to turn to a separate booklet containing the complete text of the proposed city charter to discover the apparent inconsistency between the information provided in the ballot pamphlet and the actual text of the term limits provision. We do not suggest that an inconsistency between the ballot pamphlet and the actual text of a measure necessarily must be resolved in favor of the ballet pamphlet in all circumstances. (See *Delaney v. Superior Court* (1990) 50 Cal.3d 785, 802-803 [268 Cal.Rptr. 753, 789 P.2d 934] [held that a weak inference in a ballot pamphlet did not prevail over the plain language of the measure itself].) However, in these circumstances, where the ballot pamphlet and the recent history of the term limits law reasonably led the voters to believe that the law was unchanged and where the fundamental right to hold public office is at issue, we conclude that the voters did not intend to change the term limits law so as to disqualify persons who had served two terms of office before July 1993.

The declarations by the chairpersons of the two charter reform commissions (see fn. 6, *ante*) are consistent with this conclusion, in that they provide credible evidence that the commission members did not anticipate that anyone would be affected by the omission of the language in question. It is, of course, arguable that their declarations, which were submitted to the trial court, are not indicative of the voters' intent because there was no showing that the commissions informed the voters of what they did or did not intend by the omission. (*Rossi v. Brown, supra,* 9 Cal.4th at p. 700, fn. 7; *Delaney v. Superior Court, supra,* 50 Cal.3d at p. 801.) ▮ However, as the Supreme Court noted in *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692 [170 Cal.Rptr. 817, 621 P.2d 856], the statement of an individual legislator could properly be considered as evidence of legislative intent as long as the statement was "a reiteration of legislative discussion and events leading to adoption of proposed amendments rather than merely an expression of personal opinion." (*Id.* at p. 700.) The declarations of the two commission chairpersons would seem to fall within the ambit of that rule.

In light of our construction of Charter section 206, we need not consider whether the construction applied by the city would be a retroactive application of law in violation of either Government Code section 36502, subdivision (b), or the federal Constitution.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its order denying the petition for writ of mandate and enter a new

order granting the petition in accordance with the views expressed in this opinion. The alternative writ issued on August 17, 2000, is discharged. This decision is final as to this court seven calendar days after the date this opinion is filed, to prevent frustration of the relief granted. (Cal. Rules of Court, rule 24(d).) Petitioners shall recover their costs in this proceeding.

Klein, P. J., and Kitching, J., concurred.