Filed 8/21/14 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOHN RANDO et al., | B254060 |
| Petitioners and Appellants, | (Los Angeles County Super. Ct. No. BS145904) |
| v. | |
| KAMALA HARRIS, | <u>ORDER MODIFYING OPINION</u> [NO CHANGE IN JUDGMENT] |
| Respondent, | |
| FRANK QUINTERO, | |
| Real Party in Interest and Respondent. | |

THE COURT:*

It is ordered that the opinion filed herein on August 6, 2014, be modified as follows:

On page 13, paragraph two, line 5, remove only the citation *Braziel v. Superior Court* (2014) 225 Cal.App.4th 933, 945, keeping the beginning parenthesis and the bracket and wording immediately following the citation, and replace it with the following:

*Silicon Valley Taxpayers' Assn. v. Garner* (2013) 216 Cal.App.4th 402, 407-408.

There is no change in the judgment.

_____

\* BOREN, P.J., ASHMANN-GERST, J., FERNS, J.†
† Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOHN RANDO et al., | B254060 |
| Petitioners and Appellants, | (Los Angeles County Super. Ct. No. BS145904) |
| v. | |
| KAMALA HARRIS, as Attorney General, etc., | |
| Respondent, | |
| FRANK QUINTERO, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. James Chalfant, Judge. Affirmed.

Michel & Associates, C.D. Michel and Sean A. Brady for Petitioners and Appellants.

Kamala Harris, Attorney General, Douglas J. Woods, Senior Assistant Attorney General, Mark R. Beckington and Susan K. Smith, Deputy Attorneys General for Respondent.

Michael J. Garcia and Andrew C. Rawcliffe for Real Party in Interest/Respondent.

Real party in interest Frank Quintero (Quintero) was appointed to fill a vacant position on the city council for real party in interest the City of Glendale (City). Petitioners and appellants John Rando and Mariano Rodas thereafter submitted an application for leave to sue in quo warranto to respondent Kamala Harris, the Attorney General for the State of California (Attorney General). They argued Quintero's appointment violated the City Charter. The Attorney General denied the application and the trial court denied appellants' petition for writ of mandate challenging that decision.

We affirm. The Attorney General did not abuse her discretion in determining that it was not in the public interest to authorize the initiation of a quo warranto action.

## FACTUAL AND PROCEDURAL BACKGROUND

### *City of Glendale Governance.*

The City is governed by a City Charter. Article IV, section 3 of the Charter provides that City council members are compensated. Article VI of the Charter contains provisions regarding "[t]he Council Generally" and in section 13 specifies how a vacancy on the City council must be filled, providing, "[a]ny vacancy occurring in the council shall be filled by a majority vote of the remaining members of the council." The person appointed serves until the next local or statewide election, whichever is earlier. In the event an appointment is not made within 30 days of the vacancy, a special election must be held. In the same article, section 12 (Section 12) captioned, "Councilmembers holding other city offices" provides: "A councilmember shall not hold any other city office or city employment except as authorized by State law or ordinarily necessary in the performance of the duties of a councilmember. No former councilmember shall hold any compensated city office or city employment until two (2) years after leaving the office of councilmember. (1982.)"

Prior to its 1982 enactment via Proposed Charter Amendment JJ, Section 12 read: "No members of the council shall be eligible to any office or employment, except an elective office, during the term for which he was elected." The neutral analysis in the ballot pamphlet for Amendment JJ explained the amendment was designed to clarify that the ban on employment in Section 12 applied only to City employment—not to other

2

outside employment.  The argument in favor of the amendment similarly stated:  "This amendment clarifies the language in the present Charter which leaves in question the right of councilpersons to be employed while on the Council.  It clearly states that a council member may not hold another City office nor may a council member use his influence to obtain employment with the City until two years after leaving his council office."  The argument against the amendment emphasized the valuable experience a council member could provide to the City in other capacities, asserting as one example: "Couldn't an attorney who has had four or more years on the council become a most valuable part of the legal department?  Perhaps even the manager?"

*April 2013 Events.*

On April 2, 2013, the City held its municipal elections, which included the election of a City Treasurer and three City council members.  The terms of Quintero and two other council members had expired, and Quintero did not run for re-election.  After the election results were finalized on April 11, 2013, three new council members took office and Quintero's term of office ended.  In the same election, sitting City council member Rafi Manoukian had run for City Treasurer and won, thereby creating a vacancy on the City council.  Pursuant to Article VI, section 13 of the Charter, the City council appointed Quintero to serve the remainder of Manoukian's term, set to expire in June 2014.

*Quo Warranto and Writ Proceedings.*

Code of Civil Procedure[1] section 803 provides:  "An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military . . . within this state.  And the attorney-general must bring the action, whenever he has reason to believe that any such office . . . has been usurped, intruded into, or unlawfully held or exercised by any person, or when he is directed to do so by the governor."  In May 2013, appellants,

---

**1**      Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

3

the proposed "relators" as members of the public and City residents, sought leave to sue in quo warranto and submitted their application to the Attorney General in accordance with section 803.  (See also Cal. Code Regs., tit. 11, §§ 1-11.)  They argued that Quintero's appointment to the City council violated Section 12.  As proposed defendants, the City and Quintero opposed the application.

The Attorney General issued an opinion (Opinion) in October 2013, denying leave to sue on the ground that it was "not in the public interest to authorize the initiation of a quo warranto lawsuit under the present circumstances."  The Attorney General found the language of Section 12 ambiguous, reading it as either imposing a ban on any type of office and serving a term-limiting function, or applying to City employment and precluding a former council member from using his or her influence as a means to future City employment.  In view of that ambiguity, the Attorney General turned to the electorate's intent in enacting Section 12 and concluded that "reading the provision in the context of the Charter as a whole, and in light of the reasons given in the ballot pamphlet, all indications are that the provision was aimed at prohibiting (or rather continuing to prohibit) a Council member from improperly using his or her influence to gain *non-elective* City employment."  Though the Attorney General acknowledged there was "room for some debate" concerning Section 12's interpretation, she concluded the case was not close and therefore burdening the courts with the proposed quo warranto action would not further the public interest.

In November 2013, appellants filed an ex parte application seeking an alternative writ of mandate and an order to show cause why a peremptory writ should not issue, arguing the Attorney General abused her discretion by deciding the merits of the quo warranto action and, alternatively, abused her discretion by ruling incorrectly.  The Attorney General opposed the application.  The trial court issued an alternative writ of mandate to expedite a hearing on an order to show cause why a peremptory writ of mandate should not issue.  It also set a briefing schedule, and the Attorney General, the City and Quintero thereafter answered the petition and filed opposition papers.

The trial court heard the matter on January 7, 2014. At the beginning of the hearing, the trial court summarized the bases for its tentative ruling denying the writ of mandate. Rejecting the first of appellants' two arguments, it explained that the Attorney General was necessarily required to evaluate the merits of appellants' proposed action in order to determine whether their quo warranto application raised a substantial question. With respect to appellants' second argument, the trial court explained that while the plain language of Section 12 could be read to support appellants' position, nothing in the ballot materials supported the view that Section 12 precluded Quintero from holding the position of a City council member less than two years after leaving office. The trial court also considered that there was no public purpose served by appellants' interpretation and that the fundamental right to hold office may only be curtailed when clearly specified. Accordingly, the trial court reasoned that while appellants offered a plausible interpretation of Section 12, the Attorney General did not commit an extreme and indefensible abuse of discretion in concluding that the public interest would not be served by appellants' proposed action. At the conclusion of the hearing, the trial court adopted the tentative ruling denying the writ of mandate as its final order.

Thereafter, the trial court entered judgment denying the petition for writ of mandate. This appeal followed.

## DISCUSSION

Appellants maintain that the trial court erred in denying their petition for writ of mandate, arguing that the trial court essentially provided the Attorney General with unfettered discretion both to determine the merits of their claim and, in turn, to make an incorrect determination. We find no merit to their contentions.

## I.     General Principles Regarding Quo Warranto Actions and the Standard of Review.

Quo warranto was a common law writ literally meaning "by what authority" was a public office held or claimed. The crown instituted a formal inquiry into whether a subject was exercising a privilege illegally or had the right to occupy a public office. (*International Assn. of Firefighters, Local 55 v. City of Oakland* (1985) 174 Cal.App.3d

5

687, 695 (*Firefighters*); accord, 8 Witkin, California Procedure (5th ed. 2008), § 27, pp. 907-908; Black's Law Dict. (8th ed. 2004), p. 1285, col. 2.)  The quo warranto remedy is currently codified in section 803, and it is "the specific action by which one challenges 'any person who usurps, intrudes into, or unlawfully holds or exercises any public office.' [Citation.]  It is the exclusive remedy in cases where it is available.  [Citation.]  Title to an office cannot be tried by mandamus, injunction, writ of certiorari, or petition for declaratory relief.  [Citations.]"  (*Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225-1226 (*Nicolopulos*).)

The key to the remedy of quo warranto is that it can only be brought by the Attorney General, on his or her own information or by the request of a private party. (*Nicolopulos, supra,* 91 Cal.App.4th at p. 1228; *Firefighters, supra*, 174 Cal.App.3d at p. 697.)  A quo warranto action "must" be brought when the Attorney General "has reason to believe" the conditions warranting the remedy exist or when directed to do so by the governor.  (§ 803.)  Courts have construed that language to mean the Attorney General enjoys considerable discretion whether to bring any particular quo warranto action and may exercise that discretion to "'refuse to sue where the issue is debatable.'" (*Firefighters, supra*, at p. 697; see also *City of Campbell v. Mosk* (1961) 197 Cal.App.2d 640, 650-651.)

The Attorney General's discretion under section 803 is not wholly beyond the trial court's control.  As explained in *Lamb v. Webb* (1907) 151 Cal. 451, 454, the trial court's power "to compel [the Attorney General] to violate his own judgment by ordering him to grant leave to commence a suit against his own conviction and conscientious belief that such leave should not be given should be exercised only where the abuse of discretion by the Attorney General in refusing the leave is extreme and clearly indefensible."  (Accord, *City of Campbell v. Mosk, supra,* 197 Cal.App.2d at p. 645 ["Appellant must demonstrate that the Attorney General's refusal to sue was an extreme and clearly indefensible abuse of his discretion"].)

An appellant may challenge the Attorney General's exercise of discretion via a writ of mandamus.  (*Firefighters, supra*, 174 Cal.App.3d at p. 697; see also *Lamb v.*

*Webb, supra*, 151 Cal. at p. 453.) Because "[t]he trial court and appellate court perform the same function in a traditional mandamus action, . . . we therefore do not undertake a review of the trial court's findings or conclusions. [Citation.]" (*Khan v. Los Angeles City Employees' Retirement System* (2010) 187 Cal.App.4th 98, 105-106.) We consider the record to determine whether appellants have met their burden to show the Attorney General abused her discretion—in other words, whether the "decision was arbitrary, capricious, entirely lacking in evidentiary support, unlawful, or procedurally unfair. [Citation.]" (*Khan v. Los Angeles City Employees' Retirement System, supra*, 187 Cal.App.4th at p. 106.) To the extent the Attorney General's decision depended upon an interpretation of section 803, the decision raises a question of law that we review de novo. (*California Correctional Peace Officers' Assn. v. State* (2010) 181 Cal.App.4th 1454, 1460.)

## II. The Attorney General and the Trial Court Properly Construed Code of Civil Procedure Section 803 to Afford Discretion to the Attorney General to Decline to Bring a Quo Warranto Action.

In the Opinion, the Attorney General set forth the principles governing her decision whether to grant leave to sue: "[W]e must decide whether the application presents a substantial issue of fact or law that warrants judicial resolution, and whether granting the application would serve the public interest. That said, we are accorded broad discretion in determining whether to grant or deny a quo warranto application, and the existence of a 'debatable' issue or a legal dispute does not necessarily establish that the issue or dispute requires judicial resolution through the quo warranto procedure. Instead, the overall public interest is the guiding principle and paramount consideration in our exercise of discretion." (Fns. omitted.)

Following an assessment of the facts and circumstances giving rise to appellants' application, the Attorney General concluded that while the application presented a debatable issue it did not present a substantial one. The Opinion concluded: "As is the case with most legal propositions, there is room for some debate here as to the proper interpretation of section 12. Upon examining the language at issue in its full context,

7

however, we do not consider this question to be a close one, and we conclude that the overall public interest would not be furthered by burdening the courts, the parties and the public with the proposed quo warranto action. . . . [A] private party who has merely raised a debatable issue is not entitled to pursue the debate in quo warranto proceedings where we determine it would not serve the public interest." (Fns. omitted.)

In its order, the trial court outlined the Attorney General's obligations, explaining: "The test for quo warranto is whether there is a substantial issue of fact or law for a court to decide concerning the interpretation of section 12 after application of rules of construction, including the legal presumption in favor of Quintero's right to hold public office." The trial court expressly rejected appellants' assertion that the Attorney General's role was confined to weeding out frivolous or vexatious claims against public officials. Though it acknowledged case law confirming that one purpose of the application process was to prevent frivolous and vexatious prosecutions, the trial court explained that the quo warranto remedy "is vested in the People because disputes over title to public office are a public question of governmental legitimacy and not just a private quarrel among rival claimants." (See *Nicolopulos, supra*, 91 Cal.App.4th at p. 1228.) Accordingly, the trial court reasoned: "The requirement for leave to sue, therefore, is not just a procedural vehicle to weed out spurious claims. It also serves to authorize a private party to prosecute a lawsuit in the name of the People based on the public interest. The Attorney General must have reason to believe the private party is raising a substantial issue furthering the public interest before authorizing a lawsuit in the People's name."

We find no merit to appellants' assertion that the Attorney General's discretion is far more circumscribed than the trial court described and that, therefore, the Attorney General did not have discretion to deny their quo warranto application. Appellants emphasize that section 803 makes a distinction between situations where the Attorney General "may" bring an action (upon his or her own information or private party complaint) and where it "must" bring an action (when he or she has reason to believe an office is unlawfully held or when directed by the governor). (§ 803.) They further argue

8

the "reason to believe" standard is low, requiring that the Attorney General must be deemed to have abused her discretion in failing to comply with section 803's mandatory directive because their application—at a minimum—provided a reason to believe that Quintero was holding office in violation of the Charter.

Appellants' position finds no support in the law. Notwithstanding the statute's requirement that the Attorney General "must" bring an action when she has "reason to believe" certain conditions exist, the court in *Firefighters, supra,* 174 Cal.App.3d 687, determined that this language should not be construed to minimize the scope of the Attorney General's discretion. *Firefighters* highlighted the "must" language in section 803, but then explained, "'this suggestion of a mandatory duty is negated by the qualifying language ("has reason to believe"). Hence he has discretion to refuse to sue where the issue is debatable.' [Citation.] And while the subject has received but limited judicial attention, despite occasional suggestions that the court may intervene in the event of an extreme abuse of the Attorney General's discretion [citations], no such instance of mandamus issuing can be found." (*Id*. at p. 697.)

Even earlier, the court in *City of Campbell v. Mosk, supra,* 197 Cal.App.2d at page 648, construed the statute in the same manner, explaining "that the last line of section 803, stating that 'the attorney-general must bring the action, whenever he has reason to believe' the usurpation has occurred, does not exclude the exercise of his discretion." The court further described the scope of the Attorney General's discretion, particularly where the proposed action raises merely a debatable issue: "'We do not believe . . . that the debatable issue inevitably produces the quo warranto. Indeed, the Attorney General's exercise of discretion is posited upon the existence of a debatable issue. To hold that the mere presentation of an issue forecloses any exercise of discretion would mean, in effect, that contrary to the holding in the *Lamb* [*v. Webb* (1907) 151 Cal. 451] case, the Attorney General could exercise no discretion. The crystallization of an issue thus does not preclude an exercise of discretion, it causes it. [¶¶] The exercise of the discretion of the Attorney General in the grant of such approval to sue calls for care and delicacy.

9

Certainly the private party's right to it cannot be absolute; the public interest prevails." (*City of Campbell v. Mosk, supra,* 197 Cal.App.2d at p. 650.)

In addition to this authority, multiple Attorney General opinions have emphasized the broad nature of the Attorney General's discretion in granting leave to bring a quo warranto action.[2] (See, e.g., 86 Ops.Cal.Atty.Gen. 76, 80 (2003) ["'the Attorney General need not automatically grant leave to file any kind of suit presented to him if he does not in the exercise of his discretion deem it a proper subject for litigation'"]; 74 Ops.Cal.Atty.Gen. 31, 32 (1991) ["It is well settled that the mere existence of a justiciable issue does not establish that the public interest requires a judicial resolution of the dispute or that leave automatically should be granted for the relator to sue in quo warranto"]; 67 Ops.Cal.Atty.Gen. 151, 153 (1984) ["the mere existence of a legal dispute does not establish that the public interest requires a judicial resolution of the dispute or that leave automatically should be granted for the proposed relator to sue in quo warranto"].)

Thus, contrary to appellants' argument, the existence of a legal dispute or justiciable issue does not invariably give the Attorney General "reason to believe" that the conditions mandating a quo warranto action exist. Rather, the Attorney General retains discretion to evaluate the proposed action and address three relevant inquiries: "1. Is quo warranto the proper remedy to resolve the issues which are presented? [¶] 2. Has the proposed relator raised a substantial question of law or fact? [¶] 3. Would the public interest be served by judicial resolution of the question?" (72 Ops.Cal.Atty.Gen. 15, 20 (1989).) It was well within the scope of the Attorney General's discretion to conclude that the presence of a debatable issue neither raised a substantial question of law or fact, nor established that the public interest would be served by judicial resolution.

---

[2] "Attorney General opinions are entitled to considerable weight." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1087, fn. 17; see also *California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17 ["'Opinions of the Attorney General, while not binding, are entitled to great weight'"].)

**III.   The Attorney General Did Not Abuse Her Discretion in Declining to Bring a Quo Warranto Action.**

Beyond challenging the scope of the Attorney General's discretion, appellants maintain the Attorney General abused her discretion by actually resolving the question of whether Quintero's appointment violated Section 12, and resolving it incorrectly.  In the Opinion, the Attorney General outlined appellants' position that Quintero's appointment violated the provision that, "No former councilmember shall hold any compensated city office or city employment until two (2) years after leaving the office of councilmember." The Opinion reasoned that this provision could be read more than one way.  On one hand, it could be construed as encompassing any City position, including elective office, thereby operating as the functional equivalent of a term limit.  Alternatively, it could be construed to apply to non-elective, compensated positions, thus limiting a former City council member from using his or her influence as a means to gain City employment.

Applying established methods of statutory construction, the Opinion concluded that consideration of the Charter as a whole, ballot arguments for and against Amendment JJ, and the principle that limitations on the right to hold public office must be unambiguous together indicated "that the provision was aimed at prohibiting (or rather, continuing to prohibit) a Council member from improperly using his or her influence to gain *non-elective* City employment."  Conceding that the proper interpretation of Section 12 was debatable, the Opinion concluded the issue was not substantial, nor would it serve the public interest to adjudicate the issue, particularly given that Quintero's term was set to expire in June 2014.

It is well established that in determining whether to grant leave to sue in quo warranto, the Attorney General does "not attempt to resolve the merits of the controversy. Instead, [he or she] decide[s] whether the application presents substantial issues of fact or law that warrant judicial resolution, and whether granting the application will serve the public interest." (95 Ops.Cal.Atty.Gen, *supra,* at p. 51.)  Though appellants maintain that the Opinion's examination of Section 12 was an improper resolution of the merits of the

11

controversy, the trial court properly rejected that argument, stating: "[T]he Attorney General did not exceed or abuse her discretion by considering the merits of their claim. The Attorney General was required to decide whether the question of law was substantial, and was not required to grant leave to sue for a debatable proposition. Thus, she appropriately considered the merits in deciding whether the legal issue was sufficiently substantial for the court to decide." Indeed, Attorney General opinions involving whether leave to sue should be granted typically discuss the merits of the issue proposed for judicial action. (See, e.g., 95 Ops.Cal.Atty.Gen 77 (2012) [applying rules of construction and considering extrinsic evidence to determine the scope and meaning of the statutory term "policymaking management employee," and on that basis finding the relator had raised a substantial question]; 88 Ops.Cal.Atty.Gen. 25 (2005) [evaluating facts and construing Lab. Code, § 1150 to conclude the question whether individual forfeited his board position because he performed paid political consulting work during his term of office did not pose a substantial issue of fact or law].) Thus, the trial court properly concluded that the Attorney General had the discretion to utilize accepted principles of statutory construction to determine whether appellants had raised a substantial question mandating judicial resolution.

The trial court likewise properly concluded that the Attorney General did not abuse her discretion by determining appellants had not raised a substantial issue. In their application for leave to sue in quo warranto, appellants urged that Section 12 barred Quintero's appointment, while the City and Quintero asserted the provision was never intended to bar anything beyond City employment. On its face, the two-year ban in Section 12 applies to "any compensated city office or city employment . . . ." While the Opinion concluded this provision was capable of more than one meaning, it also acknowledged the propriety of examining extrinsic evidence where a literal construction suggests a meaning different from what was intended. As recently summarized in *Honchariw v. City of Stanislaus* (2013) 218 Cal.App.4th 1019, 1027: "The 'plain meaning' rule . . . does not require courts to automatically adopt the literal meaning of a statutory provision. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.) For example,

12

when a literal construction would frustrate the purpose of the statute, that construction is not adopted. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 979 [nonliteral construction of Proposition 64 adopted based on evidence of underlying purpose and voter intent]; *Bob Jones University v. United States* (1983) 461 U.S. 574, 586 [a well-established canon of statutory construction provides that literal language should not defeat the plain purpose of the statute].) Also, courts will not adopt a literal construction when it produces absurd consequences. [Citations.]" (Accord, *Woo v. Superior Court* (2000) 83 Cal.App.4th 967, 975.) Correspondingly, voter intent is the paramount consideration in interpreting a charter provision. (*Arntz v. Superior Court* (2010) 187 Cal.App.4th 1082, 1092; *Woo v. Superior Court*, *supra*, 83 Cal.App.4th at p. 975.)

In line with these principles, the Opinion considered the Charter as a whole and reasoned that the absence of any express term-limits provision militated against construing Section 12 as a term limit on City council members.[3] The Opinion further found nothing in the ballot pamphlet suggesting the voters intended to enact term limits. (See *Braziel v. Superior Court* (2014) 225 Cal.App.4th 933, 945 [official ballot pamphlet's analyses and arguments may be considered to ascertain voter intent when the statutory language is unclear or to show an interpretation consistent with otherwise unambiguous statutory language].) To the contrary, the ballot pamphlet showed that Amendment JJ was intended to clarify that City council members could maintain outside employment—not City employment—during their term and to prevent City council members from using their influence to obtain City employment. Nothing in the ballot pamphlet suggested that Amendment JJ was intended to effect term limits; none of the arguments in favor of or in opposition to Amendment JJ addressed the question of term limits. (See *Woo v. Superior Court, supra,* 83 Cal.App.4th at pp. 977-978 [declining to adopt literal construction of a measure where there was no indication voters intended that

---

[3] Though the City and Quintero also offered evidence demonstrating that in 1996 the City council rejected a term limits measure, the Attorney General accorded little weight to this evidence. (See *American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1261-1262 [the failure to enact a measure generally sheds little light on legislative intent].)

13

construction].) Finally, the Opinion was guided by the principle "that the right to hold public office is a fundamental right of citizenship [citation] that can be curtailed only if the law clearly so provides [citations]." (*Woo v. Superior Court, supra*, at p. 977.)

In finding the Attorney General did not commit an extreme and indefensible abuse of discretion, the trial court emphasized the extrinsic evidence uniformly showing the voters intended to address the issue of former council members obtaining City employment, as well as an individual's fundamental right to hold office. It concluded: "[Amendment] JJ was intended to prevent former council members from using their influence to obtain employment from the City. The extrinsic evidence shows that voters did not intend to impose a term limit on council members, and [appellants] have presented no rationale for why the voters would have wanted section 12 to ban former council members from running for elected office." (Fn. omitted.)

In asserting that the Attorney General abused her discretion by construing Section 12 so as not to bar Quintero's appointment, appellants point to reasons why an alternative construction should prevail, emphasizing that the phrase "city office" generally refers to elective and non-elective office throughout the Charter. The Attorney General acknowledged that appellants raised a debatable issue and that Amendment JJ "could have been worded more precisely"; the trial court likewise characterized appellants' argument as a "fair one." But as explained earlier, the Attorney General retains discretion whether to grant leave to sue in quo warranto where an issue is fair or debatable. (*Firefighters, supra,* 174 Cal.App.3d at p. 697; *City of Campbell v. Mosk, supra,* 197 Cal.App.2d at pp. 649-650.) Stated more generally, a decision will not be reversed for an abuse of discretion "'merely because reasonable people might disagree.'" (*Gouskos v. Aptos Village Garage, Inc.* (2001) 94 Cal.App.4th 754, 762; see also *O'Donoghue v. Superior Court* (2013) 219 Cal.App.4th 245, 269 ["That another court might reasonably have reached a different result on this issue, however, does not demonstrate an abuse of discretion"].) We find no basis to conclude the Attorney General committed an extreme and indefensible abuse of discretion in determining the

14

public interest would not be served by initiating a quo warranto action in this matter. (See *Lamb v. Webb, supra,* 151 Cal. at p. 454.)

## DISPOSITION

The judgment is affirmed. The City and Quintero are entitled to their costs on appeal.

<u>CERTIFIED FOR PUBLICATION</u>.


_____, J. *

FERNS

We concur:


_____, P. J.

BOREN


_____, J.

ASHMANN-GERST

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15