TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 23-901 |
| of | : | |
| | : | May 22, 2024 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| SUSAN DUNCAN LEE | : | |
| Deputy Attorney General | : | |

**QUESTION PRESENTED AND CONCLUSION**

GOVERNMENT WATCHDOGS, a California non-profit public benefit corporation, has applied to this office for leave to sue proposed defendant PABLO BRYANT in quo warranto to remove him from his seat on the Temecula-Elsinore-Anza-Murrieta Resource Conservation District's Board of Directors.

We conclude that there is no substantial issue of law or fact as to whether Director Bryant is lawfully holding office. We further conclude that the public interest would not be served by allowing the proposed quo warranto action to proceed. Consequently, the application for leave to sue is DENIED.[1]

---

[1] As filed, the application sought the removal of both Director Bryant and former Director Jeffrey McClenahan, who vacated his seat on the District Board on January 12, 2024, while this application was pending. Given this circumstance, the request to seek former Director McClenahan's removal from the Board is denied as moot.

1

# BACKGROUND

The Temecula-Elsinore-Anza-Murrieta Resource Conservation District (District) is a resource conservation district governed by Public Resources Code division 9, chapter 3 (sections 9151-9500).  Within its boundaries, a resource conservation district may be given a wide range of responsibilities for preserving local natural resources including soil, water, forests, lands, and plant and wildlife populations, as well as protecting these resources from natural and man-made disasters.[2]

The District is one of several resource conservation districts within Riverside County, and covers approximately 790 square miles surrounding the city of Temecula, including Lake Elsinore, Anza, and Murrieta.[3]  The District is governed by a board of five directors, who are appointed to four-year terms by the Riverside County Board of Supervisors.[4]

Public Resources Code section 9314 sets out requirements for appointing directors to a resource conservation district.  As relevant here, section 9314 provides:

> The board of supervisors shall appoint directors . . . from those candidates who have filed an application with the board of supervisors, as prescribed by the board of supervisors.  If the directors are to be appointed, a notice of election shall not be published, but a notice of vacancy shall be posted pursuant to Section 54974 of the Government Code.[5]

Pursuant to section 9314, "The expiration of the term of any director does not constitute a vacancy, and the director shall hold office until his or her successor has qualified."[6]  As for the timing of appointments, section 9314 provides that, "If the board of supervisors does not conduct interviews of potential candidates or make an

---

[2] Pub. Res. Code, § 9151.

[3] District website, https://www.teamrcd.org/about-us (as of May 20, 2024).

[4] Pub. Res. Code, §§ 9314, 9316; Riverside Co. Ord. No. 662, available at https://rivco.org/county-ordinances (as of May 20, 2024).

[5] Pub. Resources Code, § 9314, subd. (b)(1); see Gov. Code, § 54974, subd. (a) ("a special vacancy notice shall be posted in the office of the clerk of the local agency, on either the local agency's Internet Web site or at the library designated pursuant to Section 54973, and in other places as directed by the legislative body").

[6] Pub. Res. Code, § 9314, subd. (a).

23-901

appointment within 60 days after the expiration of the term, the board of directors may make the appointment."[7]

Riverside County Ordinance No. 662 governs the appointment of conservation district directors in Riverside County. As relevant here, a person is eligible for appointment under the ordinance if the person is "a designated agent of a resident landowner within the District."[8] With respect to the appointment process, Ordinance No. 662 states that applications for appointment to the board are to be made on a designated form provided by the Registrar of Voters,[9] and that "[c]ompleted applications are to be filed with the Registrar of Voters by the applicable filing deadline date."[10]

We turn now to the timeline of the events at issue:

On February 8, 2022, Pablo Bryant was appointed to fill a vacant seat on the District Board for the remaining months of a four-year term ending in November 2022.

On September 6, 2022—approximately two months before that earlier term ended—Bryant filed his application for re-appointment to the Board for a four-year term, running from 2023 to 2026. It is Bryant's application for re-appointment that is challenged here.

Bryant is a resident of San Diego County. His re-appointment application indicated that he was qualified to serve on the Board as the agent of Temecula resident and land owner Raymond Stann. In support of his application, Bryant submitted a letter from Stann, dated August 6, 2022, which verified that Stann was a resident of the District

---

[7] Pub. Res. Code, § 9314, subd. (b)(4).

[8] Riverside Co. Ord. No. 662, § 2(c) states:

> (1) A Director shall be a registered voter in the state.
>
> (2) A Director shall:
>
> (a) reside within the District *and either* own real property in the District *or* alternatively have served for two years or more as an associate director providing advisory or other assistance to the Board of Directors, or
>
> (b) be a designated agent of a resident landowner within the District.

(Emphasis in original.) These provisions mirror the qualification provisions for conservation board members set forth in Public Resources Code section 9352.

[9] Riverside Co. Ord. No. 662, § (2)(b) ("The application required to be filed by candidates shall be the Declaration of Candidacy form . . . as provided by the Registrar of Voters.")

[10] Riverside Co. Ord. No. 662, §§ (1), (2)(b).

3

23-901

and an owner of real property within the District on Calle Fuente in the City of Temecula, and requested that Bryant be appointed to the District Board as his agent.

On September 6, 2022, the same day that Bryant filed his re-appointment application, a deed was recorded in Riverside County showing Stann's sale and transfer of the Calle Fuente property to a new owner.

On September 7, 2022, a deed was recorded in Riverside County showing Stann's purchase of another property—also located within the District—on Calle Camellia in the City of Temecula.

On November 7, 2022, the Riverside County Registrar of Voters filed a Notice of Vacancy for seats on the District board, pursuant to Ordinance No. 662, section 2(b). The Registrar of Voter's Notice stated that regular terms for director positions were coming open on the five resource conservation district boards within Riverside County, including the District at issue here. The Notice of Vacancy stated prominently: "APPLICATION FILING PERIOD: Commencing Nov. 7, 2022, ending Nov. 22, 2022, at 5:00 p.m."

On January 9, 2023, Board of Supervisors staff became aware that the Calle Fuente address submitted on Bryant's application was no longer accurate.

On January 11, 2023 (approximately seven weeks after the noticed application period had closed), Bryant provided the Board of Supervisors with Stann's new Calle Camellia address, along with a letter from Stann confirming his ownership of the Calle Camellia property and requesting Bryant appointment to the District Board as his agent.

On January 12, 2023, the Riverside County Assessor's Office confirmed that Stann was the owner of the Calle Camellia property.

On January 24, 2023, the Board of Supervisors appointed Bryant to a seat on the District Board.

Government Watchdogs now applies for our permission to file a quo warranto action against Bryant to remove him from his seat on the District Board on the ground that the Board of Supervisors—by accepting Bryant's early submission and late correction to his application—failed to observe its own rules in the process leading up to Bryant's appointment, rendering that appointment void as a result.

In opposition, the Board of Supervisors contends that all applicable statutes and ordinances were followed, and that any irregularities in the process were harmless, and therefore do not void Bryant's appointment.

4

23-901

**ANALYSIS**

Quo warranto is a civil action used, among other purposes, to challenge an incumbent public official's right to hold a given public office.[11] When a private party seeks to pursue a quo warranto action in superior court, as here, that party must first obtain the Attorney General's permission to do so. In determining whether to grant consent, we do not attempt to resolve the merits of the controversy. Rather, we consider (1) whether quo warranto is an available and appropriate remedy; (2) whether the application raises a substantial issue of law or fact that warrants judicial resolution; and (3) whether authorizing the quo warranto action will serve the public interest.[12] We grant leave to sue where all three of the above factors are present, but in this case, we conclude that the second and third factors are lacking. We therefore deny leave to sue.

## 1. Availability of Quo Warranto Remedy

Section 803 of the Code of Civil Procedure authorizes an action in the nature of quo warranto to remove a person who unlawfully holds a public office.[13] Membership on the governing board of a resources conservation district is a public office within the meaning of section 803.[14] The allegations and arguments advanced by Government Watchdogs here, if accepted, could support a conclusion that Bryant is unlawfully holding public office.[15] So quo warranto is—at least potentially—an available and appropriate remedy here.

We note as well that Government Watchdogs alleges violations of state and federal due process and various ethical violations by the Riverside County Board of Supervisors and Registrar of Voters during the appointment process, as well as misconduct in office by proposed defendant Bryant. To the extent these allegations seek redress against third parties, or against Bryant for his official conduct, they lie outside the proper bounds of a quo warranto action.[16] Removal of the incumbent official from office

---

[11] Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225; 76 Ops.Cal.Atty.Gen. 157, 162-163 (1993).

[12] *Rando v. Harris* (2014) 228 Cal.App.4th 868, 879; 72 Ops.Cal.Atty.Gen. 15, 20 (1989).

[13] See *Nicolopulos v. City of Lawndale*, *supra*, 91 Cal.App.4th at p. 1225.

[14] 84 Ops.Cal.Atty.Gen. 135, 136 (2001).

[15] See 85 Ops.Cal.Atty.Gen. 60, 61 (2002) (water district director is public office).

[16] In any event, as discussed below, we conclude that the present quo warranto application fails to demonstrate how the consideration of Bryant's early application, or his later update to that application to reflect the address of Stann's newly-purchased

5

23-901

based on the incumbent's ineligibility to hold it, and related monetary penalties, are the only authorized quo warranto remedies where the lawfulness of holding a public office is challenged.[17]  In other words, the sole cognizable issue here is whether Bryant is lawfully holding his seat on the District Board.

## 2. No Substantial Issues Regarding the Lawfulness of Bryant's Appointment

Government Watchdogs argues that the application period (November 7, 2022 to November 22, 2022) displayed on the Registrar of Voters' Notice of Vacancy was mandatory, and that Bryant should have been disqualified for appointment because he submitted his application *before* the opening of this two-week period.  Bryant contends that his early application was properly considered along with all of the other applications that were received by the noticed closing date of November 22, 2022, at 5:00 p.m.  He also argues that, regardless of the Registrar's Notice, the Board of Supervisors had the power to appoint any qualified candidate until at least 60 days after the previous term expired.[18]

Additionally, Government Watchdogs alleges that Bryant's application reflected an outdated address for his sponsor, Mr. Stann, which was not corrected until after the two-week period closed.  In response, Bryant argues that he was properly qualified throughout the relevant period, and maintains that the late correction of Stann's address on his application was harmless because the Board properly ascertained Bryant's qualifications before his timely appointment.

Our review of the applicable laws persuades us that the early application and late correction were minor irregularities at worst, inconsequential to the process, and insufficient to void Bryant's appointment.[19]  Appointments to resource conservation directorships are governed by Public Resources Code section 9314, which states:  "The

---

property, somehow rendered the appointment process unfair to other applicants.

[17] See Code Civ. Proc., §§ 803, 807, 809.

[18] See Riverside Co. Ord. No. 662, § 2(b) ("[E]xpiration of a director's regular term of office shall occur on the last Friday in the month of November"); see also Pub. Res. Code, § 9314, subd. (b)(4) ("If the board of supervisors does not conduct interviews of potential candidates or make an appointment within 60 days after the expiration of the term, the board of directors may make the appointment.").

[19] See 3 McQuillin, Mun. Corps., § 12:138 (3d ed.) (general rule that method of appointment must conform to applicable law is subject to exception that harmless errors may frequently be disregarded); 62 C.J.S. (2024) Municipal Corporations, § 428 (The appointment is to be made or the election held in the manner prescribed by constitution, statute, charter, or ordinance).

6

board of supervisors shall appoint directors . . . from those candidates who have filed an application with the board of supervisors, *as prescribed by the board of supervisors*."[20] In this case, the Riverside County Board of Supervisors has prescribed, via Ordinance No. 662, that "Completed applications are to be filed with the Registrar of Voters *by the applicable filing deadline date*."[21] There is no dispute that the law was satisfied in this respect. The facts before us demonstrate that Bryant filed a completed application "by the applicable filing deadline date," which was November 22, 2022, as listed on the Notice of Vacancy that was posted by the Registrar of Voters.

The claim put forth here is not that Bryant's application was too late, but that it was too early. That claim relies on an assumption that the Notice of Vacancy created a two-week window (from November 7 to November 22, 2022) within which applications must be filed in order to be validly considered. The applicable law does not support that assumption. As set forth above, the Public Resources Code establishes a requirement that a board of supervisors "shall appoint directors . . . from those candidates who have filed an application with the board of supervisors, as prescribed by the board of supervisors." Here, what the Riverside Board of Supervisors has "prescribed" is that applications must be filed "*by the applicable filing deadline date*."[22] The Board of Supervisors has not prescribed any opening date for applications; that was imposed by the Riverside County Registrar of Voters, not by the Board of Supervisors. Nothing in state or county law required an opening date to be set for such applications.[23] It follows that Bryant did not violate any law by filing his application early.

As to the alleged lateness of Bryant's *correction* to his application, we perceive that to be inconsequential as well. Although Bryant amended his application later in the process to show Stann's new address, the record demonstrates that there was no deficiency in Bryant's eligibility for appointment. To the contrary, the record demonstrates that Stann was a resident landowner at all relevant times; that Bryant was designated as Stann's agent at all relevant times; and that Bryant's qualification as Stann's agent was officially ascertained and confirmed before Bryant was appointed. We do not perceive that a late correction to Bryant's completed application harmed the process or the other applicants in any way, and we decline the invitation to construe

---

[20] Pub. Res. Code, § 9314, subd. (b)(1) (emphasis added).

[21] Riverside Co. Ord. No. 662, § (2)(b) (emphasis added).

[22] Riverside Co. Ord. No. 662, § (2)(b).

[23] We do not mean to suggest as a general proposition that an application period, for appointment to public office or otherwise, may not set firm and legally binding opening and closing dates. We merely conclude that the laws applying specifically to this case do not provide for a mandatory opening date that would disqualify early filings such as the one at issue here.

23-901

Bryant's corrected application as a *new* application for appointment that was improperly submitted and considered after the submission deadline.

Government Watchdogs attempts to demonstrate harm by submitting various declarations describing the experiences of other applicants who assert that they were qualified for the appointment. In our view, however, none of these proffered declarations offers any evidence supporting an inference that that the Board of Supervisors' consideration of Bryant's early application somehow rendered the appointment process unfair for those other applicants.

In assessing the present claims, we are mindful that California law has long recognized the principle that the right to hold public office is a fundamental right of citizenship,[24] which may not be curtailed unless the law clearly provides for it.[25] Any ambiguity in a law affecting that right must be resolved in favor of eligibility to hold office.[26] In this case, there is no law prohibiting the submission of an appointment application several weeks early, nor does the law clearly prohibit submitting a correction to a completed application. To the extent that these gaps in the law leave room for ambiguity about the permissibility of Bryant's early application and subsequent correction of that application in this case, we are bound to resolve it in favor of the office holder.

Even where an issue presented for our consideration is debatable, the Attorney General has "considerable discretion" in determining whether a particular claim is sufficiently substantial to warrant the initiation of a quo warranto lawsuit and the resulting expenditure of judicial resources.[27] We conclude that Government Watchdogs has not raised substantial issues of law and fact as to whether the alleged defects in Bryant's application was sufficient to invalidate his appointment to the District Board.

---

[24] *Zeilenga v. Nelson* (1971) 4 Cal.3d 716, 720; *Woo v. Superior Court* (2000) 83 Cal.App.4th 967, 977.

[25] *Carter v. Com. on Qualifications ,etc.* (1939) 14 Cal.2d 179, 182; *Helena Rubenstein Internat. v. Younger* (1977) 71 Cal.App.3d 406, 418; see *Woo v. Superior Court*, *supra*, 83 Cal.App.4th at p. 977.

[26]*Carter v. Com. on Qualifications ,etc.*, *supra*, 14 Cal.2d at p. 182; *Helena Rubenstein Internat. v. Younger*, *supra*, 71 Cal.App.3d at p. 418; see *Woo v. Superior Court*, *supra*, 83 Cal.App.4th at p. 977.

[27] 106 Ops.Cal.Atty.Gen. 1, 9 (2023); see *Rando v. Harris*, *supra*, 228 Cal.App.4th at p. 875.

### 3. No Public Purpose Supports Granting Leave to Sue

In the absence of a substantial question of fact or law requiring judicial resolution, we find there is no public purpose sufficient to warrant an action in quo warranto.[28]

For all the reasons stated above, leave to sue in quo warranto is DENIED.

---

[28] See *Rando v. Harris*, *supra*, 228 Cal.App.4th at p. 882.

23-901