## THE PEOPLE ex rel BOHEN v. HOSSEFROSS.

UNDER the sixth section of the San Francisco Consolidation Act of 1856, it was intended that a Superintendent of Public Streets and Highways of that city and county should be elected at the general election in the Fall of that year; and the person then elected held his office for the full term of two years.

APPEAL from the Twelfth District.

The facts appear in the opinion of the Court. Defendant had judgment below. Relator appeals.

*Porter & Sawyer*, for Appellant.

I. The only point made by the defendant is, that inasmuch as the sixth section of the Consolidation Act provides for electing the Superintendent of Streets and Highways at the time prescribed by law for the election of State and county officers, no election of such officer can take place, except when there is a combined election for State and county officers.

The plaintiffs say that State and county officers are, or may be elected at every " general election," and therefore the Superintendent of Public Streets in San Francisco may be by law elected at any general election.

It is true, the first election of State officers took place in 1851, and the majority of such officers hold for two years, and hence are elected in the odd years; but it by no means follows that such officers may not lawfully be chosen in the even years. For instance: the Superintendent of Public Instruction is elected once in three years. He is a State officer. (Wood's Dig. art. 2857.)

When the Consolidation Act was passed, the Clerk of the Supreme Court, too, was elected in the even years, and not in the years with other State officers. (Wood's Dig. art. 2856.)

So, too, when vacancies shall happen in the several State offices; the next general election is the time to vote for persons to fill them. (Wood's Dig. arts. 2882, 2883.)

The same section six of the Consolidation Act includes under the same phraseology, to wit: "At the times and in the mode of electing State and county officers," judges and inspectors of elec-

tions, whose term of office is for one year only, and at the time of the passage of the act, Justices of the Peace and Constables were also included, and the tenure of their offices was then one year under said act.

But if we accept the theory or construction of the defendant, none of these officers can be elected oftener than once in two years, and that in the even years, although the tenure of their offices is but one year.

This office was created by the Consolidation Act, and in section three of the schedule to said act it is provided, that until the next " general election " the present County Surveyor shall act as Superintendent of Public Streets and Highways. The next " general election " was in 1856, and the officer has been elected every two years since. The act was passed April, 1856, and by the above provision it is clear that the election of this officer, as well as of all the officers to be created by it, was to take place at the general election of 1856, and every two years thereafter.

*Wise & Gough,* for Respondent.

The question for determination is, What is the time fixed for the election of " State and county officers," as these terms are used in the sixth section of the Consolidation Act ?

This time is not simply a " general election." A "general election " and an election for State and county officers are not synonymous. The latter election must by statute happen at the general election, but a " general election " may, and does take place without the election of " State and county officers." A general election happens at a stated time every year, when " Members of Assembly " are to be chosen, and such other officers as are required by law to be chosen at such an election. (Wood's Dig. art. 2113, 375.)

The election of " Members of the Assembly " makes and constitutes the " general election," and theirs alone. Governors, Senators, &c., may be elected by law at that time, but their election does not constitute the " general election," for they hold for two years, and the general election is a yearly election by the above statute.

When, then, is the time for the election of State and county officers ?   In Wood's Digest, 557, arts. 2854, 2855, 2856, the Governor, Lieutenant Governor, Controller, Treasurer, Attorney General, Surveyor General, and one Judge of Supreme Court were to be elected at the " general election " in 1851, and at the " general elections " every two years thereafter.   And by art. 2861 all the county officers are to be elected at said " general election " in 1851, and every two years thereafter.   Although the fixing of the time by the Legislature for the election of State officers is immaterial, since they are constitutional officers, whose terms are by that instrument fixed, (*People ex rel* v. *Burbank*, 12 Cal.) yet it is controlling with reference to county officers ; and although there are some State officers who are not elected as above provided, yet this is the only election for " State and county officers " combined.

The first election, then, for " State and county officers " took place at the " general election " in 1851, and every two years thereafter—that is to say, in 1853, 1855, 1857 and 1859.

The conclusion, then, is that Hossefross holds until the " general election " in 1861, by virtue of his election in 1859.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

The record in this case, which was *quo warranto*, involving title to the office of Superintendent of Public Streets and Highways of the city and county of San Francisco, shows the following facts :

At the general election of 1856, one R. C. Devoe was elected by the voters of the county to the office ; he held the office until 1858, when Hossefross was elected, and afterwards in 1859 reëlected ; and the latter has been holding ever since ; and now claims the office by virtue of this last election.   At the last general election (1860) relator, Bohen, received a majority of the votes cast for this office, and was legally elected to it, if an election at that time was valid.

This office was created by the Consolidation Act, applicable to the city and county of San Francisco, passed nineteenth of April, 1856.   By the sixth section of this act it is provided, that " there shall be elected hereafter, for said city and county of San Fran-

cisco, by the qualified electors thereof, at the times and in the mode prescribed by law for the election of State and county officers, one President of the Board of Supervisors, a County Judge, Clerk, Police Judge, Chief of Police, Sheriff, Coroner, Recorder, Treasurer, Auditor, Tax Collector, Assessor, Surveyor, Superintendent of Common Schools, Superintendent of Public Streets and Highways, District Attorney, and two Dockmasters for the port of San Francisco, who shall respectively continue in office for two years, and until their successors shall be elected and qualified ; and the office of Harbormaster, for the city of San Francisco, is hereby abolished and repealed ; and in and for each of said districts, by the qualified electors thereof, one Supervisor, one Justice of the Peace and one School Director, who shall continue in office for two years, and until their successors are elected and qualified ; also one Constable, and one Inspector and two Judges of Election, who shall hold their offices for one year, and until their successsors are elected and qualified ; *provided,* that all the present county officers of the county of San Francisco, making their official bonds conformable to the provisions of this act, shall continue to exercise their respective functions as officers of the said city and county of San Francisco, and subject to all the provisions and restrictions in this act contained, until their respective terms of office expire by law.    And all Justices of the Peace (and) Constables in said county shall continue in office until their successors shall be elected and qualified in the several districts, as provided in this act ; *and provided further*, that in all elections for Inspector and Judges of Election, each qualified voter shall vote for one Inspector and one Judge of Election only, and that the person having the highest number of votes for Inspector, shall be declared elected Inspector ; and the two having the highest number of votes for Judges, shall be the Judges of Election for the respective district."    (Session Acts of 1856, 147.)

By the schedule annexed to and made part of this act, it is provided, (Section 3) : " Until the next general election, the present County Surveyor of the county of San Francisco shall act as Superintendent of Public Streets and Highways, with the powers, duties and compensation, etc."

Section eight provides : "At the next general election to be held

as provided by law, there shall be elected for the city and county a President of the Board of Supervisors, Police Judge, Chief of Police, Auditor, Tax Collector, and Superintendent of Public Streets and Highways; and in the several districts therein, the Supervisors, School Directors, Justices of the Peace, Constables, and Inspectors and Judges of Elections provided for by this act; and all vacancies that may occur or exist in the elective offices provided for in this act, shall be filled at the same time."

Nothing is said in the schedule as to the duration of the term to be filled at this election.

Section six of the Act of 1856 was amended by the Act of 1857, (Session Acts, 210) but the same provision as to the time and mode of elections exists, unaltered in form; the words "at the times and mode prescribed by law for the election of State and county officers" being retained.

The question turns upon the construction of the language of the sixth section, taken in connection with the matter already given. The argument of the respondent is, that this phrase "election for State and county officers," refers to the biennial elections fixed by law, for filling the State offices, Governor, Lieutenant Governor, etc. But we think this was not the meaning attached by the Legislature to these terms. Nothing more was meant than the general or annual election. It is not perceived why the filling of this office for the allotted term was to be postponed until the year 1857. The phrase employed was not designed to be descriptive of a particular election, or to confine the filling of the office to the action of the electors at this biennial election, but merely to indicate the period of election as that at which State and county officers *might be* elected; for, on the happening of vacancies, etc., State officers may be elected at any general annual election. Besides, the term " State officers " is a general term, applicable, probably, as well to members of the Legislature as to a Governor and other officers elected by the body of the electors of the State. But if the phrase meant only an election to be had for such State officers as a Governor, etc., why use the term, "and county officers?" Moreover, the sixth section provides for the election of one Inspector and two Judges of Election; and these are to hold office *for one year*. How

could these officers be elected only at biennial elections ?    The meaning of the term, " for the election of State and county officers," is not unequivocally expressive of the biennial election ; while this provision for annual terms of these last three officers is plain, and would be rendered nugatory if the construction relied on be given.

. Again, the schedule provides for an election, at the general election in 1856, for this office, and nothing is said as to the term. The inference would seem to be that the term is to be for the full term provided for the office, where that office is made elective, and to be filled by the people at a general election.    Why should it be supposed that the Legislature meant to provide two popular elections to fill one office for the appointed term, and that term of such short duration ?

We think, for these and other reasons, that the office was filled for the whole term of two years, at the general election of 1856.

Judgment reversed and cause remanded.