Filed 5/16/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SILICON VALLEY TAXPAYERS' ASSOCIATION et al., | H038971 (Santa Clara County Super. Ct. No. CV230732) |
| Plaintiffs and Appellants, | |
| v. | |
| BARRY GARNER, as REGISTRAR OF VOTERS, etc., | |
| Defendant and Respondent; | |
| COUNTY OF SANTA CLARA et al., | |
| Real Parties in Interest and Respondents. | |

Plaintiffs Silicon Valley Taxpayers' Association, Omar D. Chatty, and Greg Coladonato appeal from a judgment of the superior court denying their petition for writ of mandate challenging the placement of Measure A (10-year 1/8 cent sales tax increase) on the November 2012 general election ballot by County of Santa Clara.[1] They contend that the placement ran afoul of article XIII C, section 2, subdivision (b), of the California Constitution (Proposition 218), which requires that local tax increase measures be placed on the ballot with a regularly scheduled general election for members of the local

---

[1] Plaintiffs sued Registrar of Voters Barry Garner as defendant and County of Santa Clara, County's Board of Supervisors, George Shirakawa (President of the Board of Supervisors), Ken Yeager (Vice-President of the Board of Supervisors), Dave Cortese (Member of the Board of Supervisors), and Liz Knis (Member of the Board of Supervisors) as real parties in interest. For clarity, we refer to defendant and real parties in interest as County.

government's governing body. According to plaintiffs, the voters should not have been allowed to vote on Measure A because no members of the local government's governing body were actually on the ballot. We disagree and affirm the judgment.

BACKGROUND

Three seats on County's Board of Supervisors were up for election in the June 2012 statewide primary election. Two seats had uncontested candidates who received 100 percent of the vote. The third seat had an election where one candidate received 58 percent of the vote. Thus, no seat required a runoff election at the November 2012 statewide general election.

In August 2012, County adopted a resolution ordering, calling, and consolidating an election on Measure A with the November 2012 statewide general election. Plaintiffs demanded that County remove Measure A from the ballot. County refused, and plaintiffs filed a petition for a writ of mandate in this court. We summarily denied the petition, and plaintiff filed a petition in superior court. The superior court denied the petition. Its written order explains the following.

"[Plaintiffs] contend that the November 6, 2012 election, albeit a regularly scheduled general election, is not 'for members of the governing body of the local government' because no seats for the Santa Clara County Board of Supervisors will in fact appear on the ballot. [Plaintiffs] conclude that [County] violated [Proposition 218] by placing Measure A on the ballot. In opposition, [County argues that it] fully complied with [Proposition 218], and that the subject language cannot reasonably be construed as limiting a local government's ability to place a tax measure on the ballot based upon whether a supervisorial candidate will actually appeal on the ballot. [Footnote omitted.] [¶] Applying the principles of constitutional interpretation [citations], the Court finds that the subject language [of Proposition 218] is not reasonably susceptible to the interpretation proffered by [Plaintiffs]. The Court agrees with [County] that the language in question, on its face, refers only to the *type* of election for which a tax measure may

2

appear on a ballot. No reference is made therein to a requirement that a candidate for the governing body of the local government actually be on the ballot in order to effectuate compliance."

In September 2012, plaintiffs filed another petition in this court and requested a stay of the superior court's judgment. We denied the petition.

In October 2012, plaintiffs appealed from the superior court's judgment.

On November 6, 2012, Santa Clara County voters passed Measure A with 56 percent of the vote.

<u>PROPOSITION 218</u>

Proposition 218 was passed in 1996 by the electorate to plug certain perceived loopholes in Proposition 13. (See Throckmorton, What is a Property Related Fee? An Interpretation of California's Proposition 218 (1997) 48 Hastings L.J. 1059; see also Patel, *Is Nothing Certain but Death? The Uncertainty Created by California's Proposition 218* (2001) 35 U.S.F. L.Rev. 385.) Specifically, by increasing assessments, fees, and charges, local governments tried to raise revenues without triggering the voter approval requirements in Proposition 13. (See Ballot Pamp., Gen. Elec. (Nov. 5, 1996), argument in favor of Prop. 218, p. 76.)

"Structurally, Proposition 218 sets up a dual system of voting on taxes. It contains two parallel subdivisions, now set forth respectively in article XIII C, section 2, subdivision (b) and article XIII C, section 2, subdivision (d), of the state Constitution. They govern two different kinds of taxes. The language in each subdivision is *almost* identical. A vote is required before a tax may be imposed, extended or increased. But the required quantum of support for the tax varies with the kind of tax being imposed, extended or increased. If, as provided for in subdivision (b), a tax is a 'general' one, the quantum is a simple majority. But if the tax is 'special,' a super-majority of two-thirds is required." (*Citizens Assn. of Sunset Beach v. Orange County Local Agency Formation Com.* (2012) 209 Cal.App.4th 1182, 1189.)

3

Article XIII C, section 2, subdivision (b), is at issue in this case. This provision states: "No local government may impose, extend, or increase any general tax unless and until that tax is submitted to the electorate and approved by a majority vote. A general tax shall not be deemed to have been increased if it is imposed at a rate not higher than the maximum rate so approved. *The election required by this subdivision shall be consolidated with a regularly scheduled general election for members of the governing body of the local government*, except in cases of emergency declared by a unanimous vote of the governing body." (Italics added.)

## DISCUSSION

Plaintiffs contend that, "Simply put, Article XIII C, Section 2(b) prohibits local tax increase measures from appearing on the ballot where the election is not 'consolidated with a regularly scheduled general election for members of the governing body of the local government . . . .' [¶] As no Santa Clara County Supervisorial candidates were on the November 2012 ballot, Measure A was not 'consolidated with a regularly scheduled [*sic*] election for members of the governing body of the local government' and thus should not have appeared on that November ballot."

County replies that "Because the November 2012 election was a 'regularly scheduled [*sic*] election for members of the' Board, placing Measure A on the ballot for that election comported with Proposition 218."

Reduced to its essence, the parties' dispute is over the meaning of "regularly scheduled general election for members of the" Board.

"When construing a constitutional provision enacted by initiative, the intent of the voters is the paramount consideration." (*Davis v. City of Berkeley* (1990) 51 Cal.3d 227, 234.) To determine intent, courts look first to the language of the provision, giving its words their ordinary meaning. If that language is clear in relation to the problem at hand, there is no need to go further. (*Ibid*.) In construing the language of an initiative, we consider not only the ordinary meaning of the bare words, but how those words fit into

4

the initiative as a whole. (*People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 571; *Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1037.) And "[t]here is . . . a rule of construction--well known prior to the passage of Proposition 218--that courts are required to try to harmonize constitutional language with that of existing statutes if possible." (*Citizens Assn. of Sunset Beach v. Orange County Local Agency Formation Com.*, *supra*, 209 Cal.App.4th at p. 1192.) If, on the other hand, the language is ambiguous, we turn to extrinsic indicia of voter intent, particularly what the ballot pamphlet said about the initiative. (*People v. Rizo* (2000) 22 Cal.4th 681, 685.)

We find no ambiguity in Proposition 218.

Elected members of a county's board of supervisors hold nonpartisan offices. (Elec. Code, § 334; *id*. § 314; Gov. Code, § 24000, subd. (*o*).) "Supervisors shall be elected at the general election prior to expiration of the term of the incumbents." (Gov. Code, § 24202.) "[A]n election to select [county supervisors] shall be held with the statewide primary . . . ." (Elec. Code, § 1300.) If a candidate receives a majority vote for an office, he or she "shall be elected to that office." (*Id*. § 8140.) If no candidate receives a majority vote for an office, the election "shall be deemed a primary election and a county general election shall be held with the statewide general election . . . ." (*Id*. § 1300.)

This statutory scheme instructs candidates for county supervisor that they must stand for election in a county general election during a statewide primary and, if necessary, statewide general election. It therefore contemplates that a regularly scheduled general election for members of County's governing body is an election that is fixed to occur during the statewide primary and general elections. (See *County of Alameda v. Sweeney* (1957) 151 Cal.App.2d 505, 511-512 [a regular or general election is one which recurs at stated intervals as fixed by law; it is one that occurs at stated intervals without any superinducing cause other than the efflux of time]; *Jeffrey v.*

5

*Superior Court* (2002) 102 Cal.App.4th 1, 9 [the statewide primary is a "regularly scheduled" election].)  The scheme does not contemplate the counterintuitive notion that a regularly scheduled election can simultaneously be "not regularly scheduled" in the event a contingency occurs to make the election unnecessary.

We construe Proposition 218 in harmony with the election scheme.  A regularly scheduled general election for members of County's Board of Supervisors is an election that is fixed to occur during the statewide primary and general elections.  Plaintiffs' interpretation of Proposition 218 changes the meaning of "regularly scheduled" to "actually scheduled."  (Cf. *People v. Hossefross* (1860) 17 Cal. 137, 141 [the words " 'for the election of State and county officers' " do not describe a particular election but "indicate the period of election as that at which State and county officers *might be* elected"]; see *Jeffrey v. Superior Court*, *supra*, 102 Cal.App.4th at p. 8 ["The most natural construction of the words 'regularly scheduled election' would be *any* regularly scheduled election."].)

We add that this construction of Proposition 218 is also consistent with the extrinsic indicia of voter intent to allow rather than limit the right to vote on taxes.

Proposition 218 specifically states that "[t]he provisions of this act shall be liberally construed to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent."  (Ballot Pamp., *supra*, text of Prop. 218, § 5, p. 109; Historical Notes, *supra*, p. 85.)

Proposition 218's Findings and Declarations state:  "The people of the State of California hereby find and declare that Proposition 13 was intended to provide effective tax relief and to require voter approval of tax increases.  However, local governments have subjected taxpayers to excessive tax, assessment, fee and charge increases that not only frustrate the purposes of voter approval for tax increases, but also threaten the economic security of all Californians and the California economy itself.  This measure protects taxpayers by limiting the methods by which local governments exact revenue

6

from taxpayers without their consent." (Prop. 218, § 2, Stats. 1996, p. A-295; also reprinted at Historical Notes, 2A West's Ann. Cal. Const. (2013 cum. pocket part) foll. art. XIII C, § 1, p. 171.)

In addition, proponents and opponents of Proposition 218 submitted ballot materials.

"The ballot arguments in favor of Proposition 218 emphasized the guarantee of the right to vote on taxes even if denominated 'fees,' including the right to vote on utility taxes. ('Proposition 218 guarantees your right to vote on taxes imposed on your water, gas, electric, and telephone bills.'. . .) They also emphasized that Proposition 218 was necessary to do what Proposition 13's backers hoped would have been accomplished in the first place. ('Proposition 218 simply extends the long standing constitutional protection against politicians imposing tax increases without voter approval.') [Citation.]

"The main emphasis was on plugging the loophole that allowed assessments to be imposed without a vote: 'After voters passed Proposition 13, politicians created a loophole in the law that allows them to raise *taxes without voter approval by calling taxes* "*assessments*" *and* "*fees.*" [¶] Once this loophole was created, one lawyer working with politicians wrote, assessments "are now limited only by the limits of human imagination." [¶] How imaginative can the politicians be with assessments? Here are a few examples among thousands: . . .' [Citation.] The ballot argument then listed as among the abuses of assessments a 'view tax,' assessments for an equestrian center, assessments for a park 27 miles away, and for a college football field in the Central Valley.

"The rebuttal to the argument in favor of Proposition 218 focused largely on the mechanics of the measure's voting provisions, in which votes on assessments are proportional to a landowner's exposure to the assessment. Thus the phrase 'voting power' was a main argument in the rebuttal, stressing that Proposition 218 could reduce the 'voting power' of nonlandowners. [Citation.] The rebuttal also emphasized the

prospect of service cutbacks, and the inability of local governments to impose emergency assessments in the wake of 'earthquakes, floods and fires.'  [Citation.]  And, echoing a point also made by the analyst, the rebuttal stressed that Proposition 218 would require more elections and hence generate its own administrative costs.

"In response, the backers of Proposition 218 repeated the theme that Proposition 218 would not have been necessary at all except for the interim circumvention of Proposition 13.  ('Proposition 218 simply gives taxpayers the right to vote on taxes and stops politicians' end-runs around Proposition 13.')  [Citation.]  They ended with the general theme of voting on taxes.  ('Do you believe taxpayers should have the right to vote on taxes?'. . .)"  (*Citizens Assn. of Sunset Beach v. Orange County Local Agency Formation Com.*, *supra*, 209 Cal.App.4th at pp. 1196-1197.)

To interpret "regularly scheduled general election" to mean "actually scheduled general election" would limit the opportunities for taxpayers to vote on taxes and thereby contravene one of the stated objectives of Proposition 218.  In this case, for example, County believed that a general tax was presently needed.  But plaintiffs' interpretation of Proposition 218 would tend to deny rather than enhance the right to vote on the issue.  It is true that County could place the issue on the next statewide primary election in two years.  But County might legitimately believe that the need for the tax--or alternate plan if the taxpayers voted against the tax--was in the present rather than future.  (*Dreyer's Grand Ice Cream*, *Inc. v. County of Alameda* (1986) 178 Cal.App.3d 1174, 1181-1182 [it is blackletter law that the Constitution and statutes must receive a practical and common sense construction; an interpretation that would lead to an unreasonable result must be avoided].)  Again, were there any ambiguity in Proposition 218, the stated objective to enhance taxpayer consent supports that "regularly scheduled general election" means "regularly scheduled general election" rather than "actually scheduled general election."

8

DISPOSITION

The judgment is affirmed.

_____
                                Premo, J.

WE CONCUR:

_____
    Rushing, P.J.

_____
      Elia, J.

Silicon Valley Taxpayers' Assoc., et al. v. Garner (County of Santa Clara et al.)
H038971

9

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-12-CV230732 |
| Trial Judge: | Hon. Kevin E. McKenney |
| Counsel for Plaintiff/Appellant:<br>Silicon Valley Taxpayers'<br>Association; Omar D. Chatty; Greg<br>Coladonato | The Sutton Law Firm<br>Bradley W. Hertz<br>James R. Sutton<br>Jesse A. Mainardi |
| Counsel for Defendant/Respondent:<br>Former Registrar of Voters Barry<br>Garner et al. | Office of the County Counsel<br>Lori E. Pegg, Acting County Counsel<br>Orry P. Korp, Assistant County Counsel<br>Danny Y. Chou, Assistant County<br>Counsel<br>Susan B. Swain, Lead Deputy County<br>Counsel |
| Counsel for Real Parties in Interest:<br>County of Santa Clara, The Board of<br>Supervisors of the County of Santa<br>Clara, George Shirakawa, Ken<br>Yeager, Dave Cortese, Liz Kniss | Office of the County Counsel<br>Lori E. Pegg, Acting County Counsel<br>Orry P. Korp, Assistant County Counsel<br>Danny Y. Chou, Assistant County<br>Counsel<br>Susan B. Swain, Lead Deputy County<br>Counsel |

Silicon Valley Taxpayers' Assoc., et al. v. Garner (County of Santa Clara et al.)
H038971